**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marvin WAKEFIELD,           )<br>                                         )<br>         Plaintiff,               )<br>                                         )<br>vs.                                    )<br>                                         )<br>                                         )<br>Michael J. ASTRUE, Commissioner of)<br>Social Security,                )<br>                                         )<br>         Defendant.            )<br>_____) | No. CV-07-704-PHX-NVW<br><br>**ORDER** |

The court has before it Plaintiff Marvin Wakefield's ("Wakefield's") Motion for Summary Judgment (Doc. # 16), the accompanying Memorandum (Doc. # 17) and Separate Statement of Facts in Support of His Motion for Summary Judgement (Doc. # 18), the Defendant's Response (Doc. # 20), and the Reply (Doc. #21). Mr. Wakefield's motion is denied for the reasons set forth below, and judgment will be entered for the Defendant.

**I.    Background**

Mr. Wakefield is a 53-year-old individual with a GED. (Tr. 60, 72.)  He previously worked as a construction laborer and a bus driver.  (Tr. 55-56, 67.)  He alleges that he has been disabled since March 19, 2005, as a result of back pain, hip and leg pain, circulation problems, and leg swelling.  (Tr. 54, 62, 66.)  Although his primary complaint is back pain, he stated in an October 5, 2005 disability report that also he suffered from

depression. (Tr. 91.) Mr. Wakefield states that his back pain began after a work-related accident in 1996 when he was struck by a large piece of iron pipe. (Tr. 66.) He says that he continued working, but that he required a prescription muscle relaxant and a 30-day supply of pain medication. However, he asserts that since that time the frequency of his back pain and the number of work days missed as a result have increased. (Doc. # 18 at ¶ 3.) Consequently, in 2001 or 2002 he began an on-going treatment regimen which included prescription pain medication. (*Id.*) In 2003 he was hospitalized for blood clots in his leg, a condition for which he now takes prescription blood thinners. (Tr. at 70.)

On December 23, 2004, Mr. Wakefield went to the hospital emergency room with "severe" back pain. He was sent home with more pain medication and instructed to contact his primary care physician, Dr. Shockey. (Tr. 69, 142.) He visited Dr. Shockey on five occasions from December 2004 through June 2005 where he was treated for hypertension and blood clots. (Tr. 154-72.) Upon examination, Dr. Shockey concluded that Mr. Wakefield had decreased range of motion in the lumbar spine and some tenderness to palpation. (Tr. 163-165.) In addition, his strait leg raising was "negative for referred pain." (Tr. 165.) Nevertheless, to treat his pain Dr. Shockey sent Mr. Wakefield to Rehab Arizona, which is operated by Dr. Jackson.

Mr. Wakefield avers that he stopped working on or about March 19, 2005, because of "dizzy spells and severe pain" which prevented him from performing his duties as a city bus driver. (Tr. 66.) On March 23, 2005, he attempted to get an epidural injection for pain, but the physician cancelled the injection because of his high blood pressure. (Tr. 145.) He filed an application for disability benefits soon thereafter on June 2, 2005. (Tr. 54, 62, 91.)

On July 6, 2005, Dr. Shockey provided a report in support of his application in which he concluded that Mr. Wakefield had significant degenerative disc disease of the lumbar spine. (Tr. 151.) Although Dr. Shockey is not a specialist, he assessed that Mr. Wakefield could lift no weight, could carry less than five pounds occasionally, could sit for no more than two hours at one time and no more than four hours in an eight hour day,

1   and was limited to standing/walking less than one hour in an eight-hour day. (Tr. 149-
2   51.)
3         At the request of the State, Dr. Malcolm McPhee performed a consultative
4   evaluation of Mr. Wakefield on August 29, 2005. Dr. McPhee observed that he could
5   tandem walk, walk on his heels and toes, bend forward, side bend his trunk, squat and
6   resume standing, hop, remove his sandals, and rise from a seated position and transfer
7   onto the exam table. (Tr. 174-75.) His report also found that Mr. Wakefield's sensation
8   was intact to touch and pinprick in all extremities, that he exhibited normal strength in the
9   proximal and distal muscles of all limbs, and that he had normal ranges of motion of the
10  neck, shoulders, elbows, hands, wrists, hips, knees, ankles and feet. (Tr. 174.) In
11  addition, palpation revealed no focal tenderness and strait leg raising was negative to 80
12  degrees bilaterally. (Tr. 174.)
13        Based on these clinical observations and a review of Mr. Wakefield's medical
14  records, including a MRI scan showing mild degenerative disc changes, Dr. McPhee's
15  diagnosis was chronic mid and low back pain. (Tr. 175.) Nevertheless, Dr. McPhee
16  concluded that Mr. Wakefield could frequently stoop, kneel, crouch, and crawl, and
17  occasionally climb. (Tr. 177.) Dr. McPhee found no objective reason why Mr.
18  Wakefield could not lift fifty pounds occasionally and twenty-five pounds frequently. He
19  also found that he could stand and walk about six hours in an eight-hour workday and that
20  he could sit without restrictions. (Tr. 175.)
21        Although Mr. Wakefield continued to attend regular physical therapy sessions at
22  Rehab Arizona, Dr. Jackson only examined him on two occasions. After the second
23  examination on September 28, 2005, Dr. Jackson noted that Mr. Wakefield's clinical
24  findings were normal except for a mildly antalgic gait and mildly limited range of motion
25  in his lumboscral spine. (Tr. 182.) Like Dr. McPhee, Dr. Jackson diagnosed Mr.
26  Wakefield with chronic low back pain, bilateral lower extremity pain, L4-5 grade I
27  anterolisthesis, and lumbosacral degenerative disc disease. (Tr. 182.) Dr. Jackson did not,
28  however, identify any functional limitations.

1  The final assessment of Mr. Wakefield's functional abilities was conducted by Dr. 2 Robert Estes, a State agency physician. He did not examine Mr. Wakefield, but upon 3 reviewing all of the evidence of record, concluded that he could perform activities 4 consistent with medium work that does not require concentrated exposure to vibrations or 5 hazards, such as machinery or heights. (Tr. 205-13.) Dr. Estes' assessment agreed with 6 that of Dr. McPhee and, other than the additional limitations concerning vibrations or 7 hazards, the two assessments were virtually identical.

**II.    Procedural History**

Mr. Wakefield's application for disability benefits was denied initially and upon reconsideration. (Tr. 24-25, 32-34, 37-39.) On May 10, 2006, he appeared with counsel and testified before an administrative law judge ("ALJ"). (Tr. 242-279.) In a decision dated May 26, 2006, the ALJ found that Mr. Wakefield was not disabled. The ALJ determined that Mr. Wakefield has a "severe impairment" due to his back problems, but that none of his impairments individually or in combination meet or medically equal one of the listed impairments under 20 C.F.R. § 404, Subpart P, Appendix 1. Based upon his review of the objective medical evidence, the ALJ determined that Mr. Wakefield's allegations concerning the severity of his pain were not fully credible. He also disagreed with the conclusions of his treating physician, Dr. Shockey, concerning his residual functional capacity.

The ALJ found that Dr. Estes' assessment was consistent with the reports from Dr. McPhee and agreed with their conclusions that Mr. Wakefield has a residual functional capacity to perform medium work. (Tr. 21.) Based upon this finding and testimony from a vocational expert that his job as a bus driver required an ability to perform only light work, the ALJ concluded that Mr. Wakefield could perform his past work and was not disabled within the meaning of the Social Security Act. (Tr. 22.) The Appeals Council denied Mr. Wakefield's request for review of the ALJ's decision, (Tr. 4-7), and he commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

- 4 -

### III. Standard of Review

The court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review, the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### IV. Analysis

Mr. Wakefield challenges the ALJ's decision on the grounds that 1) the ALJ did not give his treating physician's opinion controlling weight; 2) the ALJ did not provide clear and convincing reasons for his determination that Mr. Wakefield's statements concerning his symptoms lacked credibility; 3) the ALJ improperly declined to develop the record with medical expert testimony; 4) the ALJ erred in concluding that his depression was not a severe impairment; and 5) the denial of his claim was a violation of due process resulting from institutional bias against disability claimants.

**A.  The ALJ provided specific, legitimate reasons for rejecting the opinion of Mr. Wakefield's treating physician.**

Mr. Wakefield argues that the ALJ erred in relying on reports prepared by Dr. McPhee and Dr. Estes, rather than on the opinion of his treating physician, Dr. Shockey. Whereas Dr. Shockey's assessment of Mr. Wakefield's residual functional capacity places him at a less than sedentary level, Drs. McPhee and Estes opine that he is capable of performing medium work.

Generally, greater weight is given to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent" other substantial evidence in a case, then it will be given controlling weight. *Id.* Nevertheless, even where a treating physician's opinion is contradicted, it will still be afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual," *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted).

However, a treating physician's opinion "is not binding on an ALJ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Where there is a conflict between the opinion of a treating physician and an examining physician, as here, "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Factors which an ALJ may consider when evaluating a treating physician's opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the

1  opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ must also explain
2  his departure from the opinion of a treating physician even as to "ultimate conclusions,"
3  such as residual functional capacity or legal disability, which are purportedly reserved to
4  the Commissioner. *See, e.g.*, *Morgan v. Apfel*, 169 F.3d 595, 601 (9th Cir. 1999); *Lester*
5  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 183–84 (9th
6  Cir. 1995); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (noting that the
7  "subjective judgments of treating physicians are important, and properly play a part in
8  their medical evaluations"); *Cotton*, 799 F.2d at 1408.

9        Here, the ALJ summarized Dr. Shockey's assessment that Mr. Wakefield can only
10 stand/walk for one hour in each eight-hour work day, that he can not sit for more than
11 four hours during an eight-hour period, and that he could not lift any weight whatsoever.
12 (Tr. 21.) The ALJ did not give this opinion controlling weight because he concluded that
13 it was "not sufficiently supported by way of refer[ence] to objective medical evidence or
14 testing," and the record did not "independently offer conclusive objective medical
15 evidence or testing to support such extreme limitations." (Tr. 21.) The ALJ also noted
16 that Dr. Shockey "does not specialize in orthopedics," which rendered his opinion "less
17 persuasive." (Tr. 21.)

18       In addition, the ALJ pointed out that although Mr. Wakefield alleges that his
19 physical limitations are more severe than what the record supports, even he admits to
20 being capable of doing more than Dr. Shockey recommended. For example, he testified
21 that he could lift at least five pounds (and ten pounds occasionally) whereas Dr. Shockey
22 concluded that he was not capable of lifting any weight at all. (Tr. 254-56.)

23       Finally, the ALJ noted that Dr. Shockey's opinion was inconsistent with the
24 assessments provided by Dr. McPhee, who examined Mr. Wakefield, and Dr. Estes, who
25 provided an analysis of his symptoms without conducting an examination. Although their
26 opinions varied slightly, both doctors concluded that Mr. Wakefield was capable of, at
27 least: occasionally lifting fifty pounds; frequently lifting twenty-five pounds; that he
28 could stand and/or walk about six hours in an eight-hour workday; could sit for six hours

- 7 -

1  in an eight-hour day; could perform unlimited pushing and/or pulling; could frequently
2  climb ramps or stairs; could occasionally climb a ladder, rope, or scaffold; and could
3  frequently balance, stoop, kneel, crouch, and crawl.  (Tr. 21.)  The ALJ found that these
4  opinions were consistent with each other and with the record as a whole.  Contrary to
5  what Mr. Wakefield asserts, the ALJ did not "adopt" either of these opinions.  Rather, he
6  cited them as reasons why Dr. Shockey's assessment was not persuasive.  This was
7  exactly the type of specific and legitimate evidence which an ALJ must provide in order
8  to disregard the opinion of a treating physician.  Therefore, the ALJ did not err in
9  rejecting Dr. Shockey's assessment of Mr. Wakefield's residual functional capacity.

### B. The ALJ gave clear and convincing reasons for finding Mr. Wakefield's subjective complaint testimony not credible.

Mr. Wakefield also challenges the ALJ's conclusion that his testimony was not credible.  In weighing a claimant's credibility, the ALJ may consider various factors, including the claimant's daily activities, inconsistencies either in his testimony or between his testimony and his conduct, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284.  If the ALJ finds particular testimony of the claimant not credible, he must provide clear and convincing reasons for rejecting it.  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[A]bsent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons.") (citations omitted).  The ALJ also "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citations omitted).

Here, Mr. Wakefield testified that he has trouble sleeping at night, often sleeping only one hour at time for a total of six hours of sleep.  (Tr. 252.)  He also said that he is able to stand for ten minutes at time, but then has to rest for five to ten minutes; that he can only sit for one to two hours before he has to lie down; and that, with difficulty,  he

1  could occasionally lift ten pounds. On a scale of one to ten, he testified that the intensity
2  of his pain is an eight, but that medication reduces it to a four. (Tr. 257.)

3  The ALJ provided several clear and convincing reasons in support of his
4  conclusion that Mr. Wakefield's "statements concerning the intensity, duration and
5  limiting effects of these symptoms" were not "entirely credible." First, the ALJ discussed
6  the physical abilities that Mr. Wakefield displayed during Dr. McPhee's examination. At
7  that time he was able to tandem walk, walk on his heels and toes, bend forward, side bend
8  his trunk, squat and resume standing, hop, remove his sandals, rise from a seated position,
9  and transfer onto the exam table. (Tr. 20.) The ability to carry out these exercises is
10 inconsistent with Mr. Wakefield's allegations of disability.

11 Next, the ALJ discussed Mr. Wakefield's capacity to carry out his daily activities.
12 Although the fact that a claimant can perform some daily activities does not necessarily
13 preclude a finding that he is disabled, "an ability to perform such activities may be seen
14 as inconsistent with the presence of a condition which would preclude all work activity."
15 *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). *Cf. Vertigan*, 260 F.3d at 1050
16 ("One does not need to be 'utterly incapacitated' in order to be disabled."). Here, the ALJ
17 found that Mr. Wakefield could perform a variety of daily activities. Mr. Wakefield
18 testified that he lived alone, prepares his own meals, shops for groceries, uses the bus to
19 travel, makes regular trips to medical appointments, and visits friends. (Tr. 253-54.) In
20 addition, he uses his home computer up to two hours each day and makes calls on his cell
21 phone. (Tr. 253.) While not necessarily probative of the extent of Mr. Wakefield's
22 abilities, the fact that he could perform these activities supports the ALJ's decision to
23 discredit his testimony concerning the effects of his condition.

24 Finally, the ALJ also concluded that the objective findings in the record do not
25 support a finding of disability. Specifically, he noted the results of Mr. Wakefield's MRI
26 and x-rays which indicate that he has problems with lower back pain, but "nothing that
27 would support a finding of disability." (Tr. 20.) Although objective findings of medical
28 impairment may not be necessary to demonstrate a condition, an ALJ may still use

- 9 -

objective evidence to assess the intensity and persistence of a claimant's symptoms. *See* 20 CFR § 404.1429(c)(2); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). However, the ALJ did not rely solely on objective medical findings to discount Mr. Wakefield's credibility, he also relied on Dr. McPhee's report concerning his physical abilities and the extent of his daily activities. Therefore, the ALJ provided clear, convincing, and appropriate reasons for his decision to discount Mr. Wakefield's credibility.

    **C.**    **The ALJ had no duty to seek additional medical evidence because the existing record contained adequate information to make a decision concerning disability.**

Mr. Wakefield also argues that the ALJ erred by failing to further develop the record with medical expert testimony before making his final decision. Although an ALJ "has a duty to develop the record . . . even where the claimant is represented by counsel," *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir.), he must seek additional medical testimony only where the record does not permit him to make a determination about a claimant's case. *See* 20 C.F.R. § 404.1527(c); *Smolen v. Charter*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, then he had a duty to conduct an appropriate inquiry.").

Although Mr. Wakefield alleges that the ALJ should have consulted his treating physician in order to properly evaluate the cumulative effect of his symptoms, the ALJ had no such duty. The ALJ stated that he considered all of Mr. Wakefield's alleged symptoms pursuant to 20 C.F.R. § 404.1529, evaluated the objective medical evidence, and weighed the opinions provided by the physicians. (Tr. 19-21.) As discussed above, the ALJ adequately explained why he did not find the treating physician's assessment persuasive. Even after disregarding Dr. Shockey's opinion, the remainder of the evidence in the record was adequate to permit the ALJ to conclude that Mr. Wakefield could

1  perform medium work with postural and environmental limitations. Therefore, there was
2  no need for additional evidence from a medical expert.
3       In his reply, Mr. Wakefield argues for the first time that the ALJ should have
4  considered the legal consequences of operating a vehicle while under the influence of
5  prescription pain medications before concluding that he could perform his past work as a
6  bus driver. A moving party may not make arguments for the first time in its reply brief
7  because the timing of such arguments eliminates an opposing party's ability to respond.
8  Although Mr. Wakefield is prosecuting this appeal *in propria persona*, such litigants are
9  not treated any differently than parties with attorneys of record. *Jacobsen v. Filler*, 790
10 F.2d 1362, 1364 (9th 1986). In any event, Mr. Wakefield has informed the court that he
11 prepared his motion with the assistance of an unnamed attorney. Therefore, the court can
12 not rule on the merits of this new argument because it was not properly raised in his
13 motion. Similarly, the court will not consider the new report from Dr. Jackson, that Mr.
14 Wakefield also attached to his reply and which was prepared in conjunction with a second
15 application for benefits.

**D.    The ALJ's finding that Mr. Wakefield's depression was not a "severe impairment" is supported by substantial evidence in the record.**

Mr. Wakefield also alleges that the ALJ's determination that his depression was not a severe impairment was erroneous. However, under the Social Security Act an impairment is not "severe" unless it significantly limits a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. § 404.1521(a). Here, the ALJ found that Mr. Wakefield's depression did not limit his ability to care for himself, that he has no problems with his memory, and that he can function without the need of reminders. (Tr. 22.) In fact, many of the daily activities he performs are consistent with his ability to perform the mental demands of work. The ALJ also noted that the record "does not show [that Mr. Wakefield] has any substantial psychiatric problems." (Tr. 22.) Not only did no physician ever diagnose depression, Mr. Wakefield testified that he has never sought nor received mental health treatment. (Tr. 261.) Therefore, the ALJ's conclusion that his

- 11 -

depression was not a severe impairment is supported by substantial evidence and was not erroneous.

### E. Mr. Wakefield's claims of institutional bias and deficiencies of process are unfounded.

Finally, Mr. Wakefield argues that institutional bias against disability claimants has resulted in SSA regulations and procedures which violate due process. Mr. Wakefield offers no evidence in support of this claim other than the fact that his own claim was denied. However, this allegation does not rebut the "presumption of validity [that] is accorded to administrative bodies acting within their sphere of expertise." *Giles Lowery Stockyards, Inc. v. Dep't of Agric.*, 565 F.2d 321, 326 (5th Cir. 1977).

Mr. Wakefield's attack on the integrity of the ALJ is also misplaced because, "absent a showing to the contrary, agency officials are assumed capable of judging a controversy fairly and without bias or prejudice." *Id.* at 324 n.2; *see also Rollins*, 261 F.3d at 857-58 (stating that the presumption that ALJs and other quasi-judicial administrative officers are unbiased can be overcome "by a showing of conflict of interest or some other specific reason for disqualification"). As proof of bias, Mr. Wakefield offers only his assertion that the ALJ violated his right to due process when he disregarded the opinion of his treating physician and failed to further develop the record with additional medical evidence. As discussed in the sections above, both of these actions were proper. Nothing in the record suggests that the ALJ acted contrary to agency regulations or Ninth Circuit case law and Mr. Wakefield's argument that the SSA's regulations should be declared void for vagueness are conclusory and without merit. Accordingly, Mr. Wakefield has failed to establish that his claim was denied because of bias, institutional or otherwise.

IT IS THEREFORE ORDERED that Plaintiff Marvin Wakefield's Motion for Summary Judgment (Doc. #16) is DENIED.

- 12 -

IT IS FURTHER ORDERED that the clerk enter judgment for the Defendant and terminate the case.

DATED this 28th day of January, 2008.

_____
Neil V. Wake
United States District Judge